**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Family Mutual Insurance Company, a Wisconsin corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>Judi L. Nunley and James A. Nunley, wife and husband; Steven Krohn and Jane Doe Krohn, husband and wife; d/b/a Andrew Stevens & Associates, Inc., an Arizona corporation; DOES 1-X,<br><br>        Defendants. | No. CV 07-2276-PHX-MHM<br><br>**ORDER** |

Currently pending before the Court is Plaintiff's Motion for Summary Judgment. (Dkt. # 26)

**I.  Factual Background**

Plaintiff American Family Mutual Insurance Company ("American Family") seeks summary judgment in this declaratory action regarding its duty to defend its insured, Andrew Stevens & Associates ("ASA") under the terms of business owner's policy. The parties agree that ASA was insured under an American Family business owner's policy (no. 02X-12291-04) with liability limits for insured losses. (Dkt.#27 ¶ 12; #33 ¶ 12) They also agree that the policy is subject to conditions, exclusions, and other terms and contractual obligations. (Dkt.#27 ¶ 12; #33 ¶ 12)

Plaintiff American Family's version of the facts (based primarily on the allegations contained in Judi Nunley's lawsuit) is that Steven Krohn ("Krohn"), an employee of ASA, entered an office where Judi Nunley was talking to another coworker. (Dkt.# 27 ¶ 3) Krohn entered the office, began to pump his fists in the air while yelling insults at Ms. Nunley and verbally attacking her. (Dkt.# 27 ¶ 3) Ms. Nunley attempted to leave but Krohn caught up to her, forcefully grabbed her biceps with both of his hands, and pinned her up against the glass windows in the conference room. (Dkt.# 27 ¶ 5) He forcefully restrained Ms. Nunley by tightly grabbing her wrists, holding her arms, and pinning her against the glass windows, all while continuing to verbally berate her. (Dkt.# 27 ¶ 6) Ms. Nunley was not immediately able to free to free herself from Krohn's grasp. (Dkt.# 27 ¶ 3) When she was able to get free, she returned to her office where Krohn followed her while pointing his finger close to her face and yelling insults. (Dkt.# 27 ¶ 7) Later that day a meeting took place between Ms. Nunley, Krohn, and another employee. (Dkt.# 27 ¶ 8) During the meeting, Krohn acknowledged that he had a verbal argument with Ms. Nunley, that he grabbed her, and that he was very sorry. (Dkt.# 27 ¶ 9)

Defendants (Steven Krohn and ASA) argue that instead Ms. Nunley was the one doing the yelling and disputes that Krohn pumped his fist in the air while yelling insults and verbally attacking her. (Dkt. # 32 ¶ 3) They also deny that Krohn chased after her when she attempted to leave. (Dkt. #32 ¶ 4) They dispute that Krohn "forcefully grabbed" Ms. Nunley or "pinned her up against the glass windows of the conference room." (Dkt. # 32 ¶ 5) They offer evidence that Krohn never consciously intended to touch Ms. Nunley, to hold her arms and wrists, and never intended to cause her any injury or harm. (Dkt. # 32 ¶¶ 15-20) They point to Krohn's affidavit in which he stated the following:

> 2. I arrived at work on the morning of September 19, 2007, and became involved in an argument with Judi Nunley. I never intended to touch her in any way during the argument.
>
> 3. I became upset during the argument and then I realized that I was holding her by her arms and wrists.

- 2 -

    4. At the time . . . I realized I was holding Ms. Nunley's wrists, I immediately let go of her.

    5. I never consciously intended to touch her or hold on to her and never consciously thought about touching her or holding on to her at any time or in any way.

    6. At no time on September 19, 2007, or at any other time, did I ever intend to cause injury or harm to Judi Nunley.

(Dkt. #32 [Exh. 4])

Thus, while the parties do not dispute that at one point Krohn took Ms. Nunley by the arms and then the wrists, they clearly disagree on the surrounding facts, his motivation, and whether he intended to touch her.

The parties agree that Krohn was an employee of ASA. (Dkt. # 27 ¶ 1; #33 ¶ 1) The Defendants have presented evidence that Ms. Nunley was an independent contractor at the time of the alleged incident and was not under the care, custody and control of either Mr. Krohn or ASA. (Dkt. # 32 ¶ 23)

**II. Discussion**

 **A. The Summary Judgment Standard**

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©. A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982). To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

 **B. The Insurance Contract**

- 3 -

1  American Family argues that two exclusions relieve it of the duty to defend ASA from
2  the lawsuit between Ms. Nunley, Krohn, and ASA. (Dkt.# 43 at 1) The first exclusion is the
3  "expected or intended injury" exclusion and the second exclusion is the "abuse or
4  molestation exclusion." (Dkt.#43 at 2)

5  While the insurance contract itself does not appear to have been submitted to the
6  Court, the parties do not dispute the accuracy of the quotations of the applicable contractual
7  language contained in American Family's complaint and attached as Exhibit 5 to American
8  Family's Statement of Facts. (Dkt. #27-2 [Exh. 5]) The business owner's policy provides
9  generally that "We will pay those sums that the insured becomes legally obligated to pay as
10  damages because of "bodily injury" or "property damage" to which this insurance applies."
11  (Dkt.#27-2 [Exh. 5] at 5) The policy defined "bodily injury" as "bodily injury, sickness or
12  disease sustained by a person, including death resulting from any of these at the time."
13  (Dkt.#27-2 [Exh. 5] at 6) "Personal and advertising injury" was defined as "consequential
14  'bodily injury' arising out of one or more of the following offenses: a. False arrest, detention,
15  or imprisonment . . ." (Dkt.#27-2 [Exh. 5] at 6)

### 1. The Expected or Intended Injury Exclusion

The "expected or intended injury" exclusion apparently provided as follows:

> This insurance does not apply to:
> a. **Expected or Intended Jury**
>   a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.
> b. **Employer's Liability**
>   a. "Bodily injury" to:
>     I. An "employee" of the insured arising out of an in the course of :
>       1. Employment by the insured; or
>       2. Performing duties related to the conduct of the insured's business; or
>     ii. The spouse, child, parent, brother or sister of that "employee: as a consequence of Paragraph (I) above.
> This exclusion applies:

- 4 -

         a.   Whether the insured may be liable as an employer or in any other capacity; and
         b.   To any obligation to share damages with or repay someone else who must pay damages because of the injury...

(Dkt.#27-2 [Exh. 5])

### 2. The Abuse or Molestation Exclusion

The "abuse or molestation" exclusion provided as follows:

**Abuse or Molestation Exclusion**: this insurance does not apply to bodily injury, property damage, or personal and advertising injury arising out of:
   a.   The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
   b.   The negligent:
      1. Employment;
      2. Investigation;
      3. Supervision;
      4. Reporting to the proper authorities, or failure to so report; or
      5. Retention;
of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above.

(Dkt.#27-2 [Exh. 5])

### C.   The Applicability of the Expected or Intended Injury Exclusion

Plaintiff argues that coverage is excluded under the expected or intended injury exclusion because Krohn was an employee (and therefore an insured under the policy) and his acts were intended and injury expected. (Dkt.#26 at 5-9)  The parties do not dispute that Mr. Krohn was an employee; however, they completely disagree as to whether his acts were intentional.

The expected or intended injury is a common exclusion from insurance policies; the theory is that "the intentional exclusion is necessary to the insurer to enable it to set rates and supply coverage only if losses are uncertain from the standpoint of any single policyholder, and if a single insured is allowed through intentional or reckless acts to *consciously* control risks covered by [the] policy, *the central concept of insurance is violated.*"  *Transamerica Ins. Group v. Meere*, 143 Ariz. 351, 356, 694 P.2d 181, 186 (1984).  Aside from contract law, public policy also "forbids contracts indemnifying a person against loss resulting from his

- 5 -

1  own willful wrongdoing." *Transamerica Ins. Group v. Meere*, 143 Ariz. 351, 356, 694 P.2d
2  181, 186 (1984).

3        Here, the insurance company would have this Court presume intent to injure under the
4  familiar tort principle that an act may be so certain to cause a particular injury that the intent
5  to cause the harm is inferred as a matter of law and the subjective intent of the actor is
6  immaterial. (Dkt. # 26 at 6) However, to support this argument, the company cites *Farmers*
7  *Ins. Co of Arizona v. Vagnozzi*, 138 Ariz. 443, 675 P.2d 703 (1983), which ultimately
8  cautions against granting summary judgment in cases where the subjective intent of the party
9  is at issue.

10        In *Farmers,* the Arizona Supreme Court reversed the trial court's decision to grant
11  summary judgment in favor of the insurance company because competing factual inferences
12  required the trier of fact to "inquire into the actor's subjective intent." 138 Ariz. at 448, 675
13  P.2d at 709.  While the parties agreed that an elbow had been thrown during a basketball
14  game, they disagreed as to the subjective intent of the actor. *Id.* at 450, 675 P.2d at 710
15  ("Whether the injury was the intended result of Arias' act or whether the act constituted
16  negligent or grossly reckless conduct is a matter upon which reasonable minds can differ.")
17  The Court explicitly stated that the usual "presumption that a person intends the ordinary
18  consequences of his voluntary actions, used in determining the responsibility for the
19  consequences of a voluntary act, *has no application to the interpretation of terms used in*
20  *insurance contracts*." *Id.* at 449, 675 P.2d at 709 (emphasis added).

21        The other cases cited by American Family here are similarly problematic.  While the
22  court did presume an intent to injure in a child molestation case, *Nationwide Mutual*
23  *Insurance Co. v. Abernathy*, 115 N.C. App. 534, 445 S.E.2d 618, 620 (1994), this North
24  Carolina case is readily distinguishable from the facts here.  Here there are factual questions
25  as to whether Krohn even intended to touch Ms. Nunley at all.  Moreover, the *Abernathy* case
26  rested on the premise that "sexual conduct with a minor is so objectively substantially certain
27  to result in harm to the minor victim that a molester cannot claim ignorance of such effects."
28  *Id.* at 539, 445 S.E.2d at 621.  Here, in contrast, grasping someone's biceps and wrists for a

1 short period of time has no corresponding objective substantial certainty of intent to harm, particularly given that Krohn testified that as soon as he realized he was touching Ms. Nunley, he released her. At a minimum, it presents a fact question that requires a weighing of credibility and is therefore inappropriate for resolution at summary judgment.

American Family's reliance on *Transamerica Insurance Group v. Meere*, 694 P.2d 181, 189 (1984), likewise undermines its own argument that summary judgment is appropriate. In *Transamerica*, the Arizona Supreme Court reversed the trial and appellate court's decision that summary judgment in favor of the insured was appropriate. American Family quotes the following: "Thus, *if the trier of fact determines* that Meere was the aggressor and acted wrongfully by striking Prat without legal justification, the basic intent to injury will be presumed and the exclusion will apply." *Id.* at 189 (emphasis added). (Dkt.# 26 at 7)  While American Family would have this Court focus exclusively on the latter part of the quotation, the beginning of the sentence verifies that when there are disputed questions of fact, the case must be tried by a jury rather than resolved at summary judgment. The court reasoned that a blow struck in self-defense would be analogous to the blow struck in an attempt to get the basketball in *Vagnozzi*. *Id.* at 188. "In neither case does the insured have the primary intent to injure the victim" and the presumption to injury does not apply. *Id.* As is relevant to this case, the *Transamerica* court also noted that "where the insured commits an intentional act causing injury but lacks the mental capacity to act 'rationally,' the clause does not apply because its application would be 'inconsistent with a primary purpose for incorporating intentional injury exclusions . . . i.e., to preclude individuals from benefitting financially when they deliberately cause injury." *Id.* at 189 (internal citation omitted).

Where there are factual questions about whether the contact was intentional, summary judgment is inappropriate. In *Steinmetz v. National American Ins. Co.*, 121 Ariz. 268, 589 P.2d 911 (1978), the court held that it was a question of fact whether the insured actually intended to punch plaintiff (although if he had intended to punch plaintiff, the presumption of intent to harm plaintiff would follow). Therefore, the question of whether to apply the exclusion was left to the jury. The types of acts for which an intent to injure is presumed as

1  a matter of law appear to be relatively extreme.  The examples where intent to injure was
2  presumed as a matter of law involve (1) an adult man sexually molesting a seven-year-old
3  girl, *K.B. v. State Farm Fire and Cas. Co.*, 189 Ariz. 263, 265, 941 P.2d 1288, 1290 (App.
4  1997), and (2) a man firing a gun at two people nine times, *Western Agricultural Ins. Co. v.*
5  *Brown*, 195 Ariz. 45, 47, 985 P.2d 530, 533 (App. 1998).

6  Here, American Family mistakenly asserts that "[t]here is no question and Krohn
7  himself does not contest that the act of grabbing Ms. Nunley by the biceps and ultimately by
8  the wrists, restraining her freedom and movement and causing her to call out for help, was
9  an intentional and voluntary act."  In fact, he does dispute exactly that.  He testified that he
10 "never intended to touch her in any way during the argument" and that as soon as he realized
11 he was holding her wrists, he immediately let go of her.  (Dkt. #32 [Exh. 4])  He further
12 stated that he "never consciously intended to touch her or hold on to her and never
13 consciously thought about touching her or holding on to her at any time and in any way."
14 (Dkt. #32 [Exh. 4])  In its reply, American Family refers to seventeen "undisputed" facts that
15 supposedly "conclusively establish" that Krohn had the intent to injure Ms. Nunley.  (Dkt.
16 # 43 at 4-5)  However, they provide no citations to these facts; nor do they address the fact
17 that the Defendants controverted nearly every factual assertion in the statement of facts that
18 accompanied their motion for summary judgment.  It is not the role of the Court to weigh
19 competing versions of the facts and make credibility determinations.  Based on these
20 disputed issues of fact, summary judgment is denied as to the   expected or intended
21 exclusion.

22        **D.     The Applicability of the Abuse or Molestation Exclusion**

23    American Family argues that by grabbing Ms. Nunley's wrists, Krohn "committed an
24 abuse" against Ms. Nunley.  (Dkt. # 26 at 10)  It further argues that his screaming, yelling,
25 and threats inflicted emotional and physical injury constituted abuse that causes the abuse
26 and molestation exclusion clause to apply.

27    The policy's abuse or molestation exclusion states that coverage does not apply to
28 injuries arising out of the "actual or threatened abuse or molestation by anyone of any person

- 8 -

1 *while in the care, custody or control* of any insured." (Dkt.#27-2 [Exh. 5], emphasis added)
2 A crucial element for this exclusion is that the victim be in the "custody or control" of the
3 insured. Cases where "custody or control" is sufficient to allow this exclusion to apply
4 include (1) a hotel owner who sexually exploited two minor girls while they were under his
5 care at the hotel, *Sarah G. v. Maine Bonding & Cas. Co.*, 866 A.2d 835 (Maine 2005); (2)
6 a massage therapist who sexually assaulted a client under his care, *12th Street Gym Inc. v.*
7 *Philadelphia Indemnity Ins. Co*, 2006 WL 1652690 (Pa. Com. Pl. 2006); (3) a preschool that
8 failed to prevent the sexual molestation of a child in its custody by three young boys also
9 under its control, *Community Action for Greater Middlesex County, Inc. v. American*
10 *Alliance Ins. Co.*, 254 Conn. 387, 757 A.2d 1074 (2000). Courts do not appear to have
11 applied this exclusion to bar coverage when the alleged victim was not under the "care,
12 custody, or control" of the insured. For example, in *Connecticut Ins. Guar. Assoc. v. Daigle*,
13 2007 WL 806375 (Conn. Super. 2007), the court refused to apply the exclusion to bar
14 coverage when a police officer that sexually exploited several minor girls that had
15 volunteered to participate in an undercover alcohol sales sting operation. The court noted
16 that "claimants were always free to leave, free to stop participating in the 'sting operations'
17 and [did] not seem to be in any way in the custody, control, or care of" the police officer and
18 therefore refused to apply the exclusion and held that coverage applied.

19 American Family urges the court to give the ordinary and plain meaning to the
20 contract terms; however, it appears to be ignoring the ordinary and plain meaning of
21 "custody, control, or care of." American Family argues that the allegations of negligence in
22 the complaint suggest that ASA and Krohn had duty of care towards Ms. Nunley. While this
23 may be true, a duty of care to provide a safe work environment differs vastly in degree from
24 having "custody and control" over an individual. Moreover, the fact that Ms. Nunley was
25 an independent contractor further suggests that the Defendants lacked "custody and control"
26 of her. *Sword, Houston Fire & Cas. Ins. Co., Intervenor v. Gulf Oil Corp.*, 251 F.2d 829 (5th
27 Cir. 1958) (explaining that employers are not ordinarily liable for the torts of their
28 independent contractors because "'the employer does not possess the power of controlling

1 the person employed as to the details of the stipulated work'") (quoting 27 Am. Jur., *Independent Contractors* § 27). Contrary to American Family's suggestion, this interpretation does not mean that the Court is reading a "*sexual* abuse or molestation" requirement into the contract. It is merely refusing to ignore the plain meaning of the contractual requirement that the abuse or molestation occur "while under the custody and control" of the insured. American Family has not cited a single case where a business was found to have "custody and control" of its employees (let alone over its independent contractors) and attempts to excuse its lack of citations by claiming that this is a matter "of first impression." If true, this Court declines to be the first in the country to hold that a business has "custody and control" over its independent contractors. Thus, summary judgment as to this exclusion is denied.

**Accordingly,**

**IT IS HEREBY ORDERED** denying Plaintiff's motion for summary judgment. (Dkt. # 26).

**IT IS FURTHER ORDERED** setting this matter for a status hearing on April 27, 2009 at 3:30 PM to set a firm trial date.

DATED this 23rd day of March, 2009.

_____
Mary H. Murguia
United States District Judge